```
              UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF OHIO
                    WESTERN DIVISION

CIVIL ACTION NO. 1:2015-CV-00602 (WOB-KLL)

SONNY McCARTER
SUSIE McCARTER                                PLAINTIFFS

VS.              MEMORANDUM OPINION AND ORDER

BASF CORPORATION                              DEFENDANT
```

This a personal injury case removed to this Court from the Hamilton County Court of Common Pleas. (Doc. 1). Following discovery, Defendant moved for summary judgment. (Doc. 27). The Court held oral argument on the motion on March 29, 2017, and now issues this Memorandum Opinion and Order.

**I. Factual and Procedural Background**

This case involves an improbable chain reaction, ending in a personal injury to Sonny McCarter, one of the Plaintiffs. In the summer of 2013, McCarter was in approximately his thirtieth year as a field supervisor for Benner, Mechanical & Engineering (BME), a company that specializes in servicing large cooling towers. (Doc. 27-2, PageID# 179; Doc. 29-2, PageID# 379; Doc. 34, PageID# 454). In July 2013, BASF shut down part of its Cincinnati facility and hired BME to perform an annual disassembly and reassembly on its cooling tower fan. (Doc. 27, PageID# 143).

BASF closed the cooling tower, de-energized the motor, and placed a lock on that part of its facility, assuring that BME

controlled access to the area. (Doc. 27-2, PageID# 180).[1] BME controlled the area thereafter, and BASF employees only entered when "invited by a BME employee." (*Id.*).

At approximately 2:15 p.m. on August 13, 2014, McCarter was standing on the roof of the cooling tower—approximately eight stories high—watching a crane remove the old fan. (Doc. 27-4, PageID# 192-93). He noticed that the guardrail next to him was loose, and alerted his fellow BME employees on the roof. (Doc. 34-1, PageID# 465). A BASF employee was also on the roof, too, and McCarter called him over to show him the loose rail. (Doc. 27-4, PageID# 211). To display the problem, McCarter hit the guardrail and caused it to shake.[2] (Doc. 27-1, PageID# 168).

The vibration set off a highly unlikely chain reaction. A series of light poles were attached to the guard rail. (Doc. 29-5, PageID# 434). These outdoor lights were approximately 21 years old. (Doc. 29-2, PageID# 398). The vibration from the guardrail shook the light pole directly in front of McCarter. (Doc. 27-4, PageID# 193). The connection point between the light fixture and

---

[1] During discovery of this case, a BME employee said BME "had control over the cooling tower and any work being performed." (Doc. 27-2, PageID# 180).

[2] The record characterizes this in different ways, but they are differences of semantics. McCarter said he "hit" it. (Doc. 27-1, PageID# 168). A BASF employee said McCarter "shook" it. (Doc. 27-1, PageID# 159). Another BME employee said he saw McCarter "briskly shaking it." (Doc. 27-3, PageID# 184). And a BASF employee said McCarter "quickly hit the handrail two to three times, causing it to shake." (Doc. 27-6, PageID# 333).

2

the light pole was already rusted, and it cracked because of the vibration. (Doc. 27-1, PageID# 160). The light fell onto McCarter's head, which was protected by a hard hat. (Doc. 27-6, PageID# 333). McCarter fell down for a moment, and then got back up. (*Id.*). McCarter initially refused medical treatment, but did report lightheadedness and soreness in his neck. (Doc. 27-4, PageID# 216; Doc. 29-3, PageID# 422).

This was the first time any light fixture had broken in such a way at BASF. (Doc. 27-1, PageID# 159). BASF had conducted a visual check on the area, but only for dead bulbs or issues that could be observed by standing next to the fixture. (*Id.*; Doc. 29-2, PageID# 417, 419-20). To discover the weakened connection between the pole and the light fixture, BASF would have had to deconstruct the attachment. (Doc. 27-1, PageID# 160).

**II. Analysis**

This is a basic negligence case under Ohio law. "In general, a cause of action for negligence requires proof of (1) a duty requiring the defendant to conform to a certain standard of conduct, (2) breach of that duty, (3) a causal connection between the breach and injury, and (4) damages." *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 29 N.E.3d 921, 928 (Ohio 2015). To win this case at trial, Plaintiffs must prove all four of those elements. Conversely, if Defendant can show at this summary judgment stage that Plaintiffs cannot prove any one element, then Defendant is

3

entitled to summary judgment.

BASF argues it owed no duty to McCarter because McCarter was an independent contractor performing an inherently dangerous activity. "The existence of a duty in a negligence action is a question of law for the court to determine." *Mussivand v. David*, 544 N.E.2d 265, 270 (Ohio 1989). Under Ohio law, if an independent contractor engages in an inherently dangerous activity, the company that hired the independent contractor does not owe him a duty unless the company actively participated in the independent contractor's work or retained control over a critical variable of the workplace. *Whitelock v. Gilbane Bldg. Co.*, 613 N.E.2d 1032, 1034 (Ohio 1993)(citing *Hirschbach v. Cincinnati Gas & Elec. Co.*, 452 N.E.2d 326, 328 (Ohio 1983)); *see also Pinkerton v. J & H Reinforcing*, 2012-Ohio-1606, ¶ 18; *Sopkovich v. Ohio Edison Co.*, 693 N.E.2d 233, 244 (Ohio 1998); *Maddox v. Ford Motor Co.*, 86 F.3d 1156 at *2 (6th Cir. 1996).[3]

Thus, this Court must determine whether there is a material issue of fact regarding whether (1) McCarter was performing an inherently dangerous activity, and (2) BASF actively participated in McCarter's activities or retained control over a critical variable of the workplace.

---

[3] As a policy matter, the entity that actually employs the independent contractor is responsible for assuring his safety. *See* OHIO REV. CODE ANN. § 4101.11.

4

**1. McCarter was engaged in an inherently dangerous activity.**

Under Ohio law, "[a] construction site is inherently a dangerous setting." *Bond v. Howard Corp.*, 650 N.E.2d 416, 420 (Ohio 1995); *see also Frost v. Dayton Power and Light Co.*, 740 N.E.2d 734, 744 (Ohio Ct. App. 4th Dist. 2000), *amended,* 98 CA 669, 2000 WL 1029141 (Ohio Ct. App. 4th Dist. July 25, 2000); *Cefaratti v. Mason Structural Steel Co.*, 694 N.E.2d 915, 916 (Ohio 1998)(Lundberg Stratton, J, dissenting); *Whitelock*, 613 N.E.2d at 1036 (Pfeifer, J., dissenting). Since McCarter was removing a 16x12-foot fan while standing eight stories off the ground, he was engaged in construction activities, making his actions inherently dangerous.

Even assuming, *arguendo*, that McCarter was not conducting construction activities, he was still engaged in an inherently dangerous activity. Ohio courts have found the following activities to be inherently dangerous:

- Performing electrical work on a home under construction. *Cole v. Contract Framing, Inc.*, 834 N.E.2d 409, 416 (Ohio Ct. App. 10th Dist. 2005).

- Painting in a commercial, industrial setting where hard hats are required. *Frost*, 740 N.E.2d at 747.

- Painting a partially de-energized electrical substation. *Sopkovich*, 693 N.E.2d at 244.

- Working on the second floor of a building that had holes cut in the floor. *Bond*, 650 N.E.2d at 420.

5

- Working around holes cut in an upper-story floor. *Michaels v. Ford Motor Co.*, 650 N.E.2d 1352 (Ohio 1995).

- Working atop a scaffold to hang fabric at a museum. *Hesselbach v. Toledo Museum of Art*, 655 N.E.2d 831, 834 (Ohio Com. Pleas 1995).

- Performing bricklayer services atop a five-foot high scaffold. *Whitelock*, 613 N.E.2d at 1033.

- Working with methane at a construction site. *Cafferkey v. Turner Const. Co.*, 488 N.E.2d 189, 192 (Ohio 1986).

- Working atop a high-tension electrical tower. *Hirschbach*, 452 N.E.2d 326.

If an activity falls within this range, it is inherently dangerous unless the landowner could have made the premises safer by removing the dangerous condition with ordinary care. *See Barnett v. Beazer Homes Invests., L.L.C.*, 905 N.E.2d 226, 231 (Ohio Ct. App. 12th Dist. 2008)(denying summary judgment because the landowner may have been able to avoid a live electrical wire by exhibiting ordinary care); *Cole*, 834 N.E.2d at 418.

Yet, there was no way for BASF to remove the inherent danger of McCarter working "80 [to] 100 feet" in the air, assisting his BME colleagues in guiding a crane wench as it removed a 16x12-foot fan from a cooling tower. (Doc. 27-4, PageID# 192). McCarter was wearing a hard hat at the time, indicating the riskiness of the project. (Doc. 29-3, PageID# 422). *See, e.g., Cafferkey*, 488 N.E.2d at 192 (finding an inherently dangerous environment, in part because employees wore hard hats); *Frost,* 740 N.E.2d at 747 (same).

6

BASF did regular checks of the area to assure the lighting and other safety conditions were met, and no reasonable fact finder could believe BASF should or could reasonably have done more to assure the safety of those atop the cooling tower. If working at heights like a second story or a five-foot scaffold are inherently dangerous because of the threat of falling, then working six stories higher and overseeing the movement of large equipment is also inherently dangerous.

**2. BASF did not actively participate in McCarter's activities.**

Since McCarter's activities were inherently dangerous, BASF only owed him a duty if it actively participated in his activities or retained control over a critical variable of the workplace. *Sopkovich*, 693 N.E.2d at 243. Under Ohio law, active participation means an entity "directed the activity which resulted in the injury and/or gave or denied permission for the critical acts that led to the employee's injury, rather than merely exercising a general supervisory role over the project." *Bond*, 650 N.E.2d at 420–21. Mere supervision is not active participation. *Michaels*, 650 N.E.2d at 1355 (citing *Cafferkey*, 488 N.E.2d at 192).

The Ohio Supreme Court has not defined retaining or exercising "control over a critical variable in the workplace."[4] *Sopkovich*,

---

[4] One Ohio Supreme Court justices argued control of a critical variable of the workplace means the landowner must direct or oversee the independent contractor's actions. *Cefaratti v. Mason Structural Steel Co.*, 694 N.E.2d 915, 916 (Ohio 1998)(Stratton, J., dissenting). This

693 N.E.2d at 243. But the Fourth District Court of Appeals in *Frost v. Dayton Power and Light Co.* found that mere ownership of the instrument that harmed the Plaintiff is not sufficient to constitute control over a critical variable. *Frost*, 740 N.E.2d at 749. In *Frost*, an independent contractor was painting a pipe near a boiler room floor when another pipe fell onto his head. Even though the Defendant in *Frost* owned the building in question, he had turned over the boiler room to the Plaintiff's employer, and no longer retained exclusive control of the critical variable of the work environment.

Similarly, BASF did not retain control of the cooling tower where McCarter was struck by the light. McCarter's co-worker at BME said that "BME placed their padlock on the lockbox in the control room" of the cooling tower, and therefore controlled access to and operation of the area. (Doc. 27-3, PageID# 184). According to McCarter's manager at BME, "BASF did not give instructions or orders to BME or its employees regarding how to carry out BME's repair work for a Project." (Doc. 27-2, PageID# 180). In his deposition, McCarter admitted that BME was directing his

---

definition has predominated, with lower courts finding that a landowner must "g[i]ve or den[y] permission for the critical acts that led to [Plaintiff's] injury." See *Pinkerton v. J & H Reinforcing*, 2012-Ohio-1606, ¶ 36 (Ohio Ct. App. 4th Dist. 2012); *see also Lillie v. Meachem*, 2009-Ohio-4934, ¶ 32 (Ohio Ct. App. 3rd Dist. 2009); *McClary v. M/I Schottenstein Homes, Inc.*, 2004-Ohio-7047, ¶ 34 (Ohio Ct. App. 10th Dist. 2004).

8

activities and was in control of the cooling tower. (Doc. 27-4, PageID# 193-94, 196). Though BASF employees occasionally visited the cooling tower, this was only at the invitation of BME, and only to observe critical parts of the project like the removal of the fan. (*See* Doc. 27-2, PageID# 180).

These facts do not indicate that BASF "directed the activity" atop the cooling tower, *Bond*, 650 N.E.2d at 420–21, or that BASF retained or exercised "control over a critical variable in the workplace." *Sopkovich*, 693 N.E.2d at 243. Therefore, BASF did not actively participate in McCarter's activities.

### III. Conclusion

Since McCarter was an independent contractor engaged in an inherently dangerous activity that BASF did not actively participate in, BASF did not owe McCarter any duty under Ohio law. *Whitelock*, 613 N.E.2d at 1034. Absent a duty, BASF cannot be liable for negligence in this case.

Therefore, having reviewed this matter, and being sufficiently advised,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 27) is hereby **GRANTED**. A separate judgment shall enter concurrently herewith.

9

This 3rd day of April, 2017.



Signed By:
**William O. Bertelsman** *WOB*
United States District Judge